The next case this morning is 523-1273, People v. Bevely. Arguing for the appellant is Joanna Klosowska. Arguing for the appellee is Stephanie Lee. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honors, opposing counsel, may it please the court. My name is Joanna Klosowska and I represent the defendant appellant Julia Bevely. Julia Bevely raised four issues on appeal. Today I would like to focus my argument on the issue of the error of the trial court in allowing the bite mark expert evidence in through the testimony of the state's forensic odontologist and local dentist, Dr. Wold. It was error for the court to allow the evidence in without holding a F.R.I. hearing. Before trial, defense counsel objected to Dr. Wold's testimony, arguing that it would be inadmissible under this court's 2021 opinion in People v. Prant. The trial court held that under this court's decision in Prant, the state was not allowed to present testimony that would lend to a conclusion that the wound on Bevely was made by a human or to allow comparison evidence that a particular set of teeth made that wound. But in contradiction of that ruling, the state allowed the state to introduce what it was claiming was observation evidence. On the one hand, the judge stated that he was following Prant, and then on the other, he cited to the second district in Malone a case from 1976, which distinguished between visual analysis testimony and testimony that involves an intermediate mechanical stage. This court in Prant rejected Malone's limited application of F.R.I., and the court found that bite mark evidence is scientific evidence and that there is no requirement that the scientific methodology employed by the expert involve an intermediate mechanical stage for F.R.I. to apply. So here the judge misapplied the law. He was equivocal in his ruling and somewhat just demonstrating his disregard for getting it correct. He said that this court will tell us if he's wrong. Dr. Wold's testimony should have undergone F.R.I. scrutiny. Let me interrupt you there. You agree that there is case law in Ray Marriage of Alexander that basically allows the court to have an expert testify to their observations. Do you agree with that? Yes, I do agree that an expert can be allowed to testify to observations. But here I think this expert, Dr. Wold, conducted a deep analysis that required scientific methodology. And I know that this court in Prant did not outright state that bite mark evidence is unreliable. However, this court stated that it would need to undergo a F.R.I. analysis to determine whether the methodology that the expert used in deriving their conclusions is reliable. Can you expand and help me understand where Dr. Wold crossed the line from observation into scientific evidence? Yes. Well, first of all, he used methodology to come to his conclusions. His conclusions were that it was not reasonable that Beverly inflicted upon herself what he  He testified that he scientifically confirmed this was a bite mark. We know that she already told police it was, but he testified that he scientifically confirmed that. And then that requires him to do an injury pattern analysis. It's an injury on the skin that really has nothing to do with the teeth. It's kind of the role of a forensic pathologist to testify about injuries on the skin. But Dr. Wold even went so far as stating what force he believed the wound was inflicted. I'm not sure how a dentist is qualified to conduct this deep analysis on the skin. And then he also compared the moldings that he created, which also are questionable in reliability because he made a duplicative molding and then he took photographs of it. And then he also, another point I wanted to make is that he also used Photoshop on the photos of Beverly's arm where the mark was depicted. So this is completely unreliable methodology, but he did use some kind of process in coming to his conclusions and then testifying that he compared the moldings that both Beverly and the victim here's teeth and notice a place on the injury that a tooth did not impact the skin where Jade's teeth also had a gap. If this is something that the jury could have seen for themselves, the state could have held up the photograph. But here there's a whole analysis being conducted by Dr. Wold. So his testimony was scientific. It should have undergone FRI scrutiny. And I know this court did not issue a blanket ruling that the evidence is no longer inadmissible, but it strongly suggests that the evidence would not withstand FRI scrutiny. And I just want to note that a court must exercise its discretion within the bounds of the law. And here the court's failure to hold a FRI hearing, this legal error is sufficient ground for reversal under the abuse of discretion standard. And this this evidence or this I'm sorry, this error was highly prejudicial to Beverly's case. The bite mark evidence was the smoking gun for the state's case. It allowed the prosecution to argue that Jade, the victim, bit Beverly while Beverly was attacking her. It was really the only direct link between Beverly and the crime. And it was not their counsel. There wasn't their DNA evidence. Yes, there was DNA evidence. However, without the bite mark expert testimony, we know that Jade, the victim's DNA was found on Beverly's arm and that the amount was precisely the same amount of DNA as Beverly's in the sample. And the defense DNA expert, Dr. Wright, explained that given this fact, its source is unlikely to be saliva and merely household DNA. And this makes sense because Beverly had a shared family blanket over her at one point and also lived with Jade. So a lot of this DNA evidence, Dr. Wright disputed and the state's DNA analysts also agreed it's it's likely to be household DNA. The DNA evidence on Beverly's arm also didn't make sense with the prosecution's theory that Beverly somehow washed herself up, cleaned herself up before calling the police. This DNA was evidence was supposed to be separate from the bite mark evidence. But with the bite mark evidence, the DNA evidence was given a whole new context. And also. The context of Jade's mother's statement about defending yourself was powerful, as it was because of the upshot of violent crime, trafficking, drug addiction in the community and not related to Beverly. So that helped support the idea of a random attack by an unknown man. But the bite mark testimony gave Jade's mother's testimony a completely different meaning in the eyes of the jury. And the evidence in this case is not overwhelming. And as in fact, we argue it's insufficient. I don't want to concede that it's sufficient because it's not. But Beverly may have had the opportunity, but that's all we have here. We don't have an exact time of death in this case. The officer who's called, the first officer arrives 12 minutes after Beverly makes the 911 call. Then he's performing CPR on Beverly for roughly eight minutes. And then EMS arrived and they're also performing CPR on Beverly. I think that's pretty noteworthy because I don't know if it's clear that she was obviously dead at the time. And this matches Beverly's statements to police about a male intruder, her encounter with the male intruder shortly before her 911 call. Didn't the officers all testify that the blood was wax like, so it had been coagulating, so it was not fresh blood. And didn't the victim have the defendant's blood under her fingernails or some DNA under her fingernails? And then you throw in the fact that the defendant claims she went to Walmart in Carbondale when the video shows her at a Huck's in Marion. I mean, I'm not sure how you get to the idea that it was insufficient, let alone overwhelming when you have all these inconsistent statements from the defendant and the other evidence that doesn't match up. It seems to me that it does appear overwhelming. Your Honor, I agree, there's an inconsistent statement in the interview about the defendant stating that she went to Walmart in Carbondale as opposed to where the evidence undisputedly puts her at the Huck's gas station. But it's notable she was immediately taken to the police station and without even a warrant to process the situation, she voluntarily consents to be interviewed and on face value does appear the Walmart in Carbondale story is a lie. But she does tell her police her plan of going Christmas shopping. And she initially told police before the interrogation that she had gone into town. So that evidence suggests she could have just been filling in the blanks. She forgot her wallet at home and she had to turn around. And that's what she told police. She never went in. She never said that she went inside this Walmart. So she is truthful about going somewhere and having to turn back around. And if she were trying to create an alibi for herself by saying she drove to Walmart, then realized she went back and turned around. I don't know why she wouldn't say she actually went inside Walmart. But her failure to mention the stopping at Huck's gas station would have only hurt her because it established an alibi. And I think there's at least an hour of time that's unaccounted for. The state's expert, the state's cell phone analyst, Special Agent Hannity, testified that up until eleven thirty two a.m., the Beverly's phone was in her residence. And then we know that at eleven fifty three a.m., it it was located back in the vicinity of her home. And then but we don't know that she's actually inside the home. So then at twelve twenty four a.m., she calls police really from eleven thirty two to twelve twenty four. That's over an hour that is unaccounted for. We don't know if she's actually inside the home at that point in time. So her her version to police that there was a male intruder that she encountered briefly before she called 9-1-1 is not totally discredited. Just by the Wal-Mart statement alone and in this case, there's no murder weapon retrieved and there's no evidence that Beverly discarded any evidence anywhere, even though she was closely tracked by the evidence showing all of her whereabouts, basically everywhere she was going was on camera and without the bite mark test, bite mark identification comparison testimony. There's absolutely no evidence inferring that Beverly had any kind of encounter with Jade. We know for a fact Beverly was not at home. She left Jade at home for some time. There's a lot missing here in this case that would be expected if Beverly had committed this crime. There's no evidence of motive, which I know the prosecution doesn't have to prove. But I think in this case, it would be very helpful to have one because there's some there's irrationally irrational brutality involved, which, you know, the nature of the crime itself suggests that someone very violent or even on drugs committed this. And we know Beverly was not violent from the evidence in the record. She always treated Jade kindly and loved her. She has no criminal history or history of violence. And she was a lot smaller than Jade physically. So there is a question of means, whether the state established the means, how could she have conducted all these steps and then put Jade in the bathtub? If I need to stop you, you've run over your time. I'm sorry. That's OK. You were answered a question. And there's a lot to this case, obviously. And so and obviously you're going to have your time for rebuttal. But before we do move on to Miss Lee, Justice Bonner, Justice Schuller, do you have any questions at this point? No other questions. Not at this time. OK. Miss Lee, go right ahead. Good morning, your honors and counsel. May it please the court. It was not just one Wal-Mart statement. I counted it at least eight times in the two hours of interview that she gave. That was condensed, obviously, as we know, one hour and 41 minutes, and she gave her entire route. She told where she pulled in by the Taco Bell and which space she thought she pulled into. She made it clear she pulled into a space there. And at least a couple of days later, she actually told Michael she went to Carbondale Wal-Mart. So this wasn't a one time, oh, I forgot I went to Huck's. Fourteen minutes is how long she was out of the house based on the cell phone data. You compare that to 45 minutes of an unexpected extended break. She had three and a half hours from the time she signed in the morning until she took her unexpected, unexcused time off at 1107. Then she still didn't leave until another half hour. 1123 is when she got the text from Michael saying he thought he might be off work early. 1136 is when she left that residence. 1153 is when she was basically back in the area and still waited 40 minutes to call 911. Again, they responded, as one of the owners pointed out, they responded within seven minutes and this blood was already coagulated. I would also ask you to call your attention to EI 194. It's the chart of everywhere throughout this house where this blood evidence was. Much of it cleaned up or attempted to be cleaned up. Not all of it. We have as in terms of the idea that somehow Beverly put her in the bathtub, we actually really don't even know for sure because there's blood all over the bathtub as well. And you can see that the water was still running in the tub, but it was clear when the officers came. But I think EI 416 to 18, you can see a lot of the blood prints on the wall in the tub. And then Jade was actually found slumped over the side of the tub facing towards the inward of the bathroom. There's no guarantee anyone put her there per se. We do know someone chased her all over the house. She was hiding behind doors. She was running for her life, running through her own blood. That we do know. I would, as to the bite mark evidence, and I really especially want to point this out because I did not get a chance, of course, to answer the reply brief. However, on page 11 of the reply brief, they're saying that the scientific evidence is that it was confirmed to be a bite mark. The fact of the matter is that was absolutely sustained when an objection was made. The jury was instructed to disregard any sustained evidence. So we don't have that piece. Nobody complained at all that the dental impressions were improper. And as. Let me stop you there. There was a motion in Lemony, though, filed, correct? There was. And the court specifically said that you could do observational evidence. An example was evidence of the victim's teeth. And the court ruled that. And that's exactly what happened. We also have this is 15 pages of record. That's it. And it isn't Pronte. I'm sorry. Did you have another question?  I have some follow up questions. I mean, didn't the judge, though, in the motion in Lemony hearing, discuss having a Fry hearing? Didn't the judge raise that issue himself? I don't specifically recall that discussion. I think he barred anything that was not. And I could be wrong if that's not my recollection. The thing is, though, that even that what everybody is somewhat forgetting here is that Pronte went up to the Supreme Court and the Supreme Court. Basically, overturned it and sent it back. I understand that it made the finding that it was not deciding if bite mark evidence was or was not discredited. But here, even if you go with just the Pronte from from this court, this is not Pronte. It's Pronte says you can't do two things. You can't say this particular wound is a bite mark and you can't say this particular person did or didn't make it. But let me back you up there a little bit, Miss Lee. Just basically speaking, though, don't we use Fry to determine if evidence is sufficiently established or accepted within the field within a field of study or science? Yes, normally, if it's a novel a novel area of law, the thing here is that dental impressions is not. Experts providing evidence about dental impressions is not nobody except for the defendant herself who pointed to this place and pointed to her right arm and said, this is a bite mark. And I made it myself. Yeah, and I recognize that she she acknowledged it was a bite mark, but didn't Dr. Didn't he create molds? Didn't he? In fact, talk about the impressions of the teeth of the victim. I mean, I guess my question is, at what point does the evidence become observation versus scientific evidence? Well, there was no objection whatsoever to the molds themselves that I recall. The objection was the bite mark itself and the molds isn't Fry evidence. It isn't. We use molds all the time. Those are those are common, common history. So what you have in every time. Counsel, there was a standing objection, though, to the testimony of Dr. As a whole, correct, but not to the dental not to the dental molds, per se, they were they were objecting to the bite mark evidence bite mark evidence is not dental molds, which are used all the time and are not fry and are not new. And the other thing is, certainly this was within the ruling, which was you can make these comparisons of the teeth themselves, which was the molds. To the extent that the the you know the doctor made any kind of statement about the mark. He kept saying, assuming it was a bite mark. We don't he never made the conclusion that it was defendants said it was and defendants said she made it herself. Interestingly, she also said she made a cut. And showed a direction of a cut that doesn't match 806 which is a whole bunch of scratches going up and down her arm. So this defendant was explaining her wounds. She had wounds on her face. She had wounds. She had blood under her nails. She had this mark on her on her right arm. She had numerous scratches. If you look at the 806 Um, she also had Jade's. Jade's DNA was on the mark on her arm and defendants DNA was under under Jade's nails. And, you know, this isn't a reasonable hypothesis of innocence type of situation. That's not how it works. But even if you want. I mean, It's her her statements are not reasonable 14 minutes and then you end up with the blood and EI 194 all over the house. Cleaned up and you have, you know, 15 pages of testimony from Dr. Wold in the middle of all of this evidence that came out at the trial. There, there's no way, given the strength of the evidence here that that could possibly have made A difference in the outcome. And again, experts are allowed to use demonstrative exhibits to explain things here. We actually had dental molds. I think there was some stipulation to the foundation for the dental molds. If I recall correctly. But regardless that these are dental molds that is not bite mark evidence. Are you saying the evidence are you saying the evidence the bite mark evidence was not error. Are you saying that it may have been error, but the evidence is overwhelming. It's harmless error. I am actually saying it is 100% not error. However, I don't consider it bite mark evidence per se. I there was testimony about dental molds, which is something different. The only person who identified this as a bite mark was defendant herself and certainly the state would have a right to respond to her. Didn't they ask Dr. Wold assuming this is a bite mark. Tell us about They had him make that Yeah, he said, assuming it is it, it doesn't make sense. But that isn't establishing that it is, which is what is that's what's disallowed by Pronte. Is saying this person made it. This person didn't. I think my time is up. I didn't know if you wanted to address any of the other issues or. How is that not saying this person did it and this person didn't when you're comparing molds and saying there's a gap in the victim's teeth and this gap matches up here. How is that not saying this person did it or this person did not. That seems to be saying that it's saying that her story that she made that bite mark was false. That's what it's saying. She could not have made that bite mark if it was a bite mark, assuming it was a bite mark. And you just I thought you just said the scientific evidence would be saying this person made it or this person did not. And then you just said that he said she did not. So, how if it was, if it was a bite mark, she couldn't have. He never said it was a bite mark. But she said it was a bite mark, but weren't weren't all of his conclusions based on the assumption though, that it was in fact, a bite mark. Because she's well, no, his, his assuming it was. Then these are the, these are the molds. There was no object, the molds were okay. So, the molds were coming in. And that is not considered fry evidence or scientific evidence, and he certainly had a right to explain on Jade's mold, which teeth were missing. That's not about the bite mark. And again, we are talking about 15 pages of testimony. That's it in in comparison to. Overwhelming evidence, but I, what's the point of showing which teeth are missing? If not using that to compare. Well, the jury can compare the jury has every right to compare that. So, then what is the purpose of Dr world's testimony? Then if the jury can make that conclusion to assist the jury and understanding, they're not going to necessarily understand the molds. And again, the molds is not scientific evidence. That's not what anybody ever claimed was scientific. So he had a right to explain to the juror to the jurors. If you look at this mold, this is how it's oriented. This is how the teeth look. These are the teeth that are missing. That is not scientific evidence and nobody ever claimed. It was like fry evidence, dental molds have been used for years with no discrediting. And nobody objected that the actually, nobody did object that the molds were inaccurate. So, I don't that part. Is not really an issue I don't have any other questions. Thank you. Anyone Thank you we would just ask that this court affirm based on a glitch. Yeah, she's back. Did you miss anything just to show her? No, I got it. Sorry. I got Internet issues. Apologize. So, thank you. Miss Lee go right ahead with your rebuttal council. Your honors councils argued that the bite mark story is false. There are cuts on Beverly's wrist and a raised scar on her arm showing that she does in fact, self harm. And then the. Stop you, can you address some of the questions that we had with your opposing counsel? I'm trying to gather. Was the bite mark evidence what was Dr. world's testimony indication of who actually made the bite marks. Yes, it was because it was a direct comparison of the photo that he photo shopped of Beverly's arm and the. Duplicative photo of the mold that he used, so it's not just the focus shouldn't just be on the molds itself. It's just it's that he's making this injury pattern analysis and connection for the jury. Does that answer your question? It does. And your argument would then be that it would be subject to a test. Is that correct? Correct? Your honor. All right. Was there a stipulation to those molds? I, you know, I don't know. I'll have to check. All right. Thank you. Yes. And the cut on Beverly's arms, I would like to address those. They are consistent with the attack by an intruder that Beverly describes their localized. She doesn't have cuts all over her body. That might be expected had she been in this huge encounter with Jade. They're very localized. And also, if they were from Jade, there's no evidence that Jade had a knife. So there's that and then I, I don't agree with the timeline of 14 minutes that the intruder would have had. I think the testimony was that. Beverly's the last time Beverly's phone was at the house was at 1132 and then the 911 call is made at 1224. We don't know when exactly she is in that house. So, that could have given someone else an hour a good hour to commit this crime and there's just a lot of circumstantial evidence in this case, which is a lot of what the timeline is about. I don't believe there is an evidence of a cleanup. There's blood everywhere. It's a horrific scene. I don't know that there was any evidence of a cleanup. And then the last point I do want to address is that. Your decision in print did go up to the Supreme Court, but. It reversed your holding on the prejudice prong. Because notably in front, there was a lot of evidence of motive. And there's no evidence of motive here, so did not reverse. This court's finding that bite mark evidence is scientific with and. Requires scrutiny. Your honors, I, I just want to conclude because of the improper bite mark evidence that was allowed this greatly prejudice. Beverly's case, and there were improper remarks in rebuttal closing argument by the prosecution that the jury heard from Beverly's attorney, but not from her, which also prejudice her case. And due to accumulation of errors, Beverly was denied a fair trial. And because the evidence is insufficient to uphold her verdict, I would ask this court to reverse and or reverse and remand her case. For a fair trial, thank you. Counsel before we let you all go, just a show or justice Vaughn. Do you have any final questions? No questions, no other questions. Thank you. Well, thank you for your arguments today. Council. We will take the matter under advisement and issue an order in due course.